IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

ARTHUR T. PETRZELKA,

         Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

         Defendant.

No. C11-0095

RULING ON JUDICIAL REVIEW

---

**TABLE OF CONTENTS**

I.       *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.      *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . 2

III.     *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
       *A.*     *Petrzelka's Education and Employment Background* . . . . . . . . . . . 5
       *B.*     *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . 5
            *1.*     *Petrzelka's Testimony* . . . . . . . . . . . . . . . . . . 5
            *2.*     *Vocational Expert's Testimony* . . . . . . . . . . . . . . 6
       *C.*     *Petrzelka's Medical History* . . . . . . . . . . . . . . . . . . . . 7

V.       *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . 13
       *A.*     *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . 13
       *B.*     *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . 14
            *1.*     *Dr. Risk's Opinions* . . . . . . . . . . . . . . . . . . . 15
            *2.*     *Dr. Dunn's Opinions* . . . . . . . . . . . . . . . . . . . 18
            *3.*     *Washler's Opinions* . . . . . . . . . . . . . . . . . . . 19
            *4.*     *Mental Impairment* . . . . . . . . . . . . . . . . . . . 21
            *5.*     *RFC Assessment* . . . . . . . . . . . . . . . . . . . . . 22

VI.     *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VII.    *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## I.  INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Arthur T. Petrzelka on August 23, 2011, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits.  Petrzelka asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits.  In the alternative, Petrzelka requests the Court to remand this matter for further proceedings.

## II.  PROCEDURAL BACKGROUND

On September 12, 2007, Petrzelka applied for disability insurance benefits.  In his application, Petrzelka alleged an inability to work since March 10, 2002 due to fibromyalgia, depression, pain, and fatigue.[1]  Petrzelka's application was denied on November 19, 2007.  On June 28, 2008, his application was denied on reconsideration. On July 25, 2008, Petrzelka requested an administrative hearing before an Administrative Law Judge ("ALJ").  On October 1, 2009, Petrzelka appeared via video conference with his attorney before ALJ John E. Sandbothe for an administrative hearing.  Petrzelka and vocational expert Julie A. Svec testified at the hearing.  In a decision dated November 17, 2009, the ALJ denied Petrzelka's claim.  The ALJ determined that Petrzelka was not disabled and not entitled to disability insurance benefits because he was functionally capable of performing his past relevant work as a data center manager.  Petrzelka appealed the ALJ's decision.  On June 27, 2011, the Appeals Council denied Petrzelka's request for review.  Consequently, the ALJ's November 17, 2009 decision was adopted as the Commissioner's final decision.

On August 23, 2011, Petrzelka filed this action for judicial review.  The Commissioner filed an answer on December 20, 2011.  On January 30, 2012, Petrzelka

---

[1]  At the administrative hearing held on October 1, 2009, Petrzelka changed his alleged disability onset date to November 10, 2005.  *See* Administrative Record at 14; *see also id*. at 52 (ALJ's decision providing November 10, 2005 as Petrzelka's alleged disability onset date).

filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he was not disabled and could perform his past relevant work as a data center manager. On April 5, 2012, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On April 17, 2012, Petrzelka filed a reply brief. On October 12, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III.  PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010);

*see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id*. (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id*. at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV.  FACTS

### A.  Petrzelka's Education and Employment Background

Petrzelka was born in 1952.  He has a Bachelor's degree in mechanical engineering. At the administrative hearing, Petrzelka testified that he has also done "some work" towards a Master's degree in engineering.  He also testified that since 1994, his work was computer-related as a data center manager and project manager.

The record contains a detailed earnings report for Petrzelka.  The report covers Petrzelka's employment history from 1989 to 2009.  Petrzelka had mimimal earnings in 1989 (less than $3,000), and earned $20,040.91 in 1990.  He had significantly higher earnings between 1991 and 2001.  Specifically, he earned between $41,469.36 (1992) and $80,400.00 (2001).  He earned $13,135.00 in 2002, and had no earnings in 2003.  He earned $1,167.67 in 2004, and $25,781.77 in 2005.  He has no earnings since 2006.

### B.  Administrative Hearing Testimony

#### 1.    Petrzelka's Testimony

Petrzelka's attorney asked Petrzelka to explain what caused him to stop being able to work in 2005.  Petrzelka stated:

> Well, I think it happened long before that, I just -- I was working three months that year at a job I done three times before and was considered an expert at, and I couldn't do the job any more.

(Administrative Record at 14-15.)  Specifically, Petrzelka testified that he started getting warnings for being late, unable to complete tasks, and unable to focus on tasks.  According to Petrzelka, his failure at that job "really motivated me to go out and find out what was wrong."[2]  Petrzelka learned from doctors that his difficulties with his job were related to fibromyalgia.

In discussing his fibromyalgia, Petrzelka testified that he has pain "everywhere." Petrzelka's attorney further questioned Petrzelka about his fibromyalgia:

---

[2] Administrative Record at 15.

Q:    If you have more activity, are you able -- does the pain
      level change, if you're more active and doing a lot?

A:    If I'm doing exercise, it will improve.  But at this point
      in my recovery, it really makes it difficult to do much
      else that day.

Q:    So how long do you exercise?

A:    About an hour, and most of it's stretching exercises,
      but some strengthening exercise as well.

Q:    And so once you do that, are you saying that that
      exhausts you for the day?

A:    Well, it -- I can go do an hour or two of something else
      during the day, but I can't -- a good day for me is four
      hours, maybe, doing things like this, mainly talking to
      people and going to meetings for volunteer activities.

(Administrative Record at 17-18.)

Petrzelka also stated that he has difficulty with his memory.  For example, he has difficulty remembering to take his medication three times per day.  Petrzelka further testified that he suffered from depression.  Specifically, Petrzelka stated that his depression stems from "dealing with the fact that I can't do what I used to do[.]"[3]  Petrzelka further stated that "[t]rying to get motivated to get up in the morning and do the little bit that I can do, trying to keep motivated enough to start something knowing that I'm not going to finish it in all likelihood, has been very, very difficult for me."[4]  Petrzelka also indicated that his only social interaction was through volunteer activities with Alcoholics Anonymous.  He volunteers with the 12-step program at jails, prisons, and treatment centers, and sponsors several people.  His volunteering takes up about 10 to 12 hours per week.

## 2.    *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual who is able to:

---

[3] *Id*. at 20.

[4] Administrative Record at 21.

> lift 20 pounds occasionally, 10 pounds frequently. He could
> only occasionally balance, stoop, crouch, kneel, crawl, or
> climb. I would limit him to no more than a regular pace.

(Administrative Record at 25.) The vocational expert testified that under such limitations, Petrzelka could perform his past work as a data center manager. The ALJ asked the vocational expert a second hypothetical which was identical to the first hypothetical, except that the individual would be limited to a slow pace for one-third of the day. The vocational expert testified that under such limitations, Petrzelka could not find competitive work.

Petrzelka's attorney also provided the vocational expert with a hypothetical for an individual who would:

> need a job that would shift positions at-will, take unscheduled
> breaks three to four times a day up to an hour at a time, and
> . . . would be likely to miss four or more days of work per
> month due to symptoms of fibromyalgia and/or depression.

(Administrative Record at 26.) The vocational expert testified that under such limitations, Petrzelka could not find competitive work.

### C. Petrzelka's Medical History

In January 2006, Petrzelka met with Dr. Dustin L. Arnold, D.O., with concerns regarding myalgias and arthralgias. Petrzelka complained of pain "everywhere." Petrzelka reported that he "has diffuse pain provoked with exertional activity describing affliction in every joint of his body."[5] Dr. Arnold noted that:

> The symptoms began several years ago after a motor vehicle
> accident occurring in 1997. Since that time [Petrzelka's] had
> significant myalgias and artrhralgias. He goes on to state 'I
> have difficulty concentrating, at times it feels my skull will fall
> off my spine. I have multiple ribs out of place, I note
> difficulty with grips, tightness in the right side of the neck,
> that I walk funny and I have floating knee caps.

(Administrative Record at 355.) Dr. Arnold also noted that Petrzelka had suffered from major depressive disorder for an extended period of time. Upon initial examination,

---

[5] Administrative Record at 355.

Dr. Arnold diagnosed Petrzelka with myalgias and arthralgias, possibly due to fibromyalgia. Later that month, Petrzelka returned to Dr. Arnold for a follow-up visit regarding his myalgias and arthralgias. Upon examination, Dr. Arnold opined that it was "probable" Petrzelka suffered from fibromyalgia. As treatment, Dr. Arnold recommended medication and use of a CPAP machine for improved sleep. In March 2006, Dr. Arnold re-affirmed his assessment that Petrzelka suffered from "probable" fibromyalgia. Dr. Arnold continued to treat Petrzelka with medication. In July 2006, Petrzelka returned to Dr. Arnold for assessment of his myalgias. Dr. Arnold found that Petrzelka's "concerns are doing well at this time." Upon examination, Dr. Arnold diagnosed Petrzelka with myalgias secondary to fibromyalgia and sleep disorder. Dr. Arnold continued to recommend medication as treatment. Dr. Arnold concluded that "[a]lthough [Petrzelka's] chronic concerns are better under control, he still has significant disability from his fibromyalgia and sleep disorder but he does seem to be rather upbeat today in clinic."[6]

On February 20, 2007, Petrzelka met with Dr. Shahin Bagheri, M.D., for evaluation of fibromyalgia. Petrzelka reported generalized pain all over his body, fatigue, stiffness, numbness, loss of grip, loss of stamina, and intolerance to temperature variations. Petrzelka also stated that his major symptoms were in his lower to upper back. Upon examination, Dr. Bagheri diagnosed Petrzelka with diffuse and non-specific arthralgias and generalized pain, non-restorative sleep, obstructive sleep apnea, restless leg syndrome, and severe depression. Dr. Bagheri opined that "[o]verall, [Petrzelka] fulfills the diagnostic criteria for Fibromyalgia."[7] Dr. Bagheri recommended weight loss and exercise as treatment. Dr. Bagheri also suggested that more aggressive treatment of his depression might help his musculoskeletal complaints.

---

[6] *Id.* at 334.

[7] Administrative Record at 318.

On August 1, 2007, Petrzelka self-referred himself to Dr. Bryan Netolicky, M.D., for evaluation of his mood. Dr. Netolicky noted that Petrzelka had a history of recurrent depressive periods "over the years." Specifically, Dr. Netolicky found that "[i]t is most likely that [Petrzelka] has a recurrent major depressive disorder that has got in the way of his functioning. On top of that he reported history of fibromyalgia, which . . . certainly complicates the picture as well. Some element of anxiety [] may well be tied to his depression."[8]  Upon examination, Dr. Netolicky diagnosed Petrzelka with major depressive disorder, recurrent, in partial remission. Dr. Netolicky assessed a GAF score of 58 for Petrzelka. Dr. Netolicky recommended medication and psychotherapy as treatment.

On October 25, 2007, Petrzelka met with Dr. Christopher Dunn, M.D., for a disability examination. Dr. Dunn summarized Petrzelka's medical history as follows:

> [Petrzelka] describes having been diagnosed with fibromyalgia in January 2006. His local medical doctor referred him to Dr. Bagheri, . . . who confirmed the diagnosis. . . . He characterizes this as generalized arthralgias and pain which interferes with his daily activities. He reports he is unable to sit or stand for any prolonged period of time. . . . In fact, any sort of prolonged activity aggravates his discomfort. He carries a concurrent diagnosis of severe depression. . . . He sites significant memory and cognitive difficulties secondary to his combination of depression and fibromyalgia. The last medical problem that is affecting his disability application will be that of sleep apnea. He has greater than 4-year history of sleep apnea. He has been on CPAP. He is currently sleeping approximately 9 hours a night. He continues to suffer with restless leg syndrome in addition to the sleep apnea. His sleep has been characterized as 'non-restorative sleep.'

(Administrative Record at 311.) Upon examination, Dr. Dunn diagnosed Petrzelka with fibromyalgia, severe depression, and sleep apnea/restless leg syndrome. Dr. Dunn opined that:

---

[8] *Id.* at 674.

> Based on the above diagnoses, I would expect [Petrzelka] to have significant difficulty with any physical activities requiring repetitive movements, lifting, carrying, prolonged maintenance of any particular position, or travel. He should have no significant limitations based on work environment.

(Administrative Record at 312.)

On November 19, 2007, Dr. John May, M.D., reviewed Petrzelka's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Petrzelka. Dr. May determined that Petrzelka could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. May found no postural, manipulative, visual, communicative, or environmental limitations. Dr. May concluded that:

> [Petrzelka] has generalized arthralgia & myalgia diagnosed as fibromyalgia in 2-06. At [a consultative examination] he is noted to have numerous tender points, both in the recognized area but also control points. He does not totally meet the criteria established by the American College of Rhuematology. However, he does have other evidence of the disease and felt to at least have a chronic myofascial pain syndrome. His sleep apnea appears to be controlled by CPAP. He has been treated for depression which will be addressed elsewhere. The level of disability claimed by the individual is not totally supported by [the medical evidence of record] which does at least partially erode the credibility of [Petrzelka's] allegations. He has not been specifically limited by a treating source. Employability was questioned by the [consultative examining] evaluator[,] this however is the prerogative of the commissioner. He is currently felt capable of the RFC as outlined.

(Administrative Record at 696.)

On November 21, 2007, Dr. Sandra Davis, Ph.D., reviewed Petrzelka's medical records and provided DDS with a Psychiatric Review Technique for Petrzelka. Dr. Davis

diagnosed Petrzelka with major depressive disorder and alcohol dependence in full sustained remission. Dr. Davis determined that Petrzelka had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Davis concluded that:

> [Petrzelka's activities of daily living] include regular independent self-care[.] . . . He can prepare simple meals. He can do minor repairs. He composts materials. He drives and shops. . . . He uses the computer much of the day, reads and attends AA meetings. He sponsors others in AA. He goes to church. He can be intolerant of others at times and may state his opinion without diplomacy. He can follow simple instructions. He does not handle stress well but can adapt to self-imposed change.
>
> In summary, [Petrzelka] appears to have a nonsevere impairment.
>
> The medical evidence is consistent. There is no significant challenge to the credibility of [Petrzelka's] allegations, however it appears his disability would be based more on his physical than mental limitations.

(Administrative Record at 710).

On February 7, 2008, Steven Washler, LISW, Petrzelka's treating therapist, filled out a "Mental Impairment Questionnaire" for Petrzelka, provided to him by Petrzelka's attorney. In the questionnaire, Washler diagnosed Petrzelka with major depressive disorder, recurrent, alcohol dependence in remission, fibromyalgia, and restless leg syndrome. Washler indicated that Petrzelka's response to treatment shows "some improvement in motivation and emotional control and self directedness."[9] Washler described Petrzelka's symptoms as physical and emotional discomfort, heightened sense of stress, lack of motivation, irritability, lack of energy, and physical symptoms of pain and fatigue. Washler determined that Petrzelka was seriously limited, but not precluded

---

[9] Administrative Record at 741.

from:  maintaining regular attendance and being punctual within customary tolerances, sustaining an ordinary routine without special supervision, performing at a consistent pace without an unreasonable number and length of rest periods, and dealing with normal work stress.   Washler also determined that Petrzelka was unable to meet the competitive standards of completing a normal workday and workweek without interruptions from psychologically based symptoms and dealing with stress of semi-skilled and skilled work. Washler opined that the "[i]ntensity of [Petrzelka's] physical and emotional symptoms has restricted his activity."[10]  Washler concluded that Petrzelka had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace.

On October 1, 2008, Dr. Winthrop Risk, II, M.D., filled out a "Fibromyalgia Residual Functional Capacity Questionnaire" for Petrzelka, provided to him by Petrzelka's attorney.[11]  Dr. Risk diagnosed Petrzelka with fibromyalgia, depression, anxiety, sleep apnea, and restless legs.   Dr. Risk opined that Petrzelka's prognosis was guarded. Dr. Risk also emphasized that Petrzelka's depression needed to be treated.   Dr. Risk described Petrzelka's symptoms as follows:  multiple tender points, nonrestorative sleep, chronic fatigue, muscle weakness, numbness and tingling, some breathlessness, anxiety, panic attacks, depression, and carpal tunnel syndrome.   Dr. Risk opined that Petrzelka's pain and symptoms were severe enough to "constantly" interfere with attention and concentration needed to perform even simple work tasks.   According to Dr. Risk, Petrzelka is incapable of even "low stress" jobs.   Dr. Risk found that Petrzelka could: (1) walk 2 blocks; (2) sit for 1 hour before needing to get up; (3) stand for 15 minutes before needing to sit or walk around; (4) sit for about 2 hours in an eight-hour workday; and (5) stand for about 2 hours in an eight-hour workday.   Dr. Risk also found that

---

[10] *Id.* at 744.

[11] In his decision the ALJ refers to Dr. Risk as a "treating specialist," but Dr. Risk only met with Petrzelka on two occasions before filling out the questionnaire, and one of those occasions was on the date that he filled out the questionnaire.

Petrzelka would need to take 3 to 4 unscheduled breaks lasting about 1 hour during a typical eight-hour workday. Dr. Risk opined that Petrzelka's impairments produced "bad days" and "worse days." Dr. Risk estimated that Petrzelka would miss more than four days per month of work due to his impairments or for treatment of his impairments.

## V. *CONCLUSIONS OF LAW*

### A. *ALJ's Disability Determination*

The ALJ determined that Petrzelka is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citation omitted). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform

a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Petrzelka had not engaged in substantial gainful activity since November 10, 2005. At the second step, the ALJ concluded from the medical evidence that Petrzelka had the following severe impairments: fibromyalgia, chronic pain syndrome, and sleep apnea. At the third step, the ALJ found Petrzelka did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Petrzelka's' RFC as follows:

> [Petrzelka] had the residual functional capacity to perform light work . . . except that [he] can only occasionally balance, stoop, kneel, crouch, crawl, or climb. In addition, [Petrzelka] can work at no more than a regular pace.

(Administrative Record at 56.) Also at the fourth step, the ALJ determined that Petrzelka was functionally capable of performing his past relevant work as a data center manager. Therefore, the ALJ concluded that Petrzelka was not disabled.

### B. *Objections Raised By Claimant*

Petrzelka argues that the ALJ erred in five respects. First, Petrzelka argues that the ALJ failed to properly evaluate the opinions of Dr. Risk. Second, Petrzelka argues that the ALJ failed to properly evaluate the opinions of Dr. Dunn, a consultative examiner. Third, Petrzelka argues that the ALJ failed to properly evaluate the opinions of Steven

Washler, Petrzelka's therapist.  Next, Petrzelka argues that the ALJ erred by not finding he had a severe mental impairment.  Lastly, Petrzelka argues that the ALJ failed to fully and fairly develop the record with regard to his work-related limitations.

### 1.    Dr. Risk's Opinions

Petrzelka argues that the ALJ failed to properly evaluate the opinions of his "treating specialist," Dr. Risk.[12]  Specifically, Petrzelka argues that the ALJ's reasons for discounting Dr. Risk's opinions are not supported by substantial evidence in the record.  Petrzelka concludes that this matter should be reversed and remanded to allow the ALJ to properly evaluate Dr. Risk's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).  The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight.  A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

---

[12] In his opinion, the ALJ describes Dr. Risk as Petrzelka's "treating specialist." The Commissioner questions whether such a description is proper.  The Commissioner points out that when he filled out the "Fibromyalgia Residual Functional Capacity Questionnaire," Dr. Risk was only meeting with Petrzelka for the second time.  The Court, like the Commissioner, is skeptical of Dr. Risk's designation as a "treating specialist," but nevertheless will follow the ALJ's designation, and consider Dr. Risk as a treating source.  However, the Court bears in mind that the length of the treatment relationship is a factor to be considered in weighing the opinions of a treating source.  *See* 20 C.F.R. § 404.1527(c)(2)(I) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); *see also Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (applying the length of treatment factor to the opinions of a treating source who had only met with the claimant 3 times prior to rendering her opinions on the claimant's functional abilities).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).  "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions."  *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability.  *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).  If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'  *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician.  *See* 20 C.F.R. § 404.1527(d)(2).  The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician.  *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In his decision, the ALJ addressed the opinions of Dr. Risk:

> Dr. Risk's assessments are not consistent with the treatment records contained within the record.  Indeed, physical therapy treatment appeared to be quite beneficial for [Petrzelka].  [He] began physical therapy in October 2008 and performed home exercises, including stretching and strengthening.  These exercises, in conjunction with more sleep, reduced the severity of [Petrzelka's] symptoms.  In January 2009, [Petrzelka] appeared more alert on a regular basis and exhibited improved posture.  Minimal discomfort was noted during range of motion testing. . . .  Overall, [Petrzelka] exhibited decreased

pain, improved neural extensibility, improved posture, improved range of motion, increased tolerance to exercise and improved outlook on his condition. . . . Despite these improvements, [Petrzelka's] work status included in physical therapy notes was listed as 'Disabled.' The undersigned notes that statements that a claimant is 'disabled', 'unable to work', can or cannot perform a past job, meets a Listing or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. . . . The undersigned gives more weight to the medical improvement noted in the treatment records than the physical therapist's conclusion that [Petrzelka is] 'disabled.'

(Administrative Record at 58.)   Additionally, the ALJ found that:

[Petrzelka] engaged in diverse activities of daily living, which one would not expect given his allegations of disabling symptoms. [Petrzelka] used the computer daily, attended AA meetings regularly, went to church, talked with friends on the phone, shopped for groceries online and in person, prepared simple meals, and carried out compost weekly. Furthermore, [he] performed volunteer work for twelve hours per week as an alcohol counselor. This further supports a finding that [Petrzelka] is capable of remembering and keeping track of tasks. Physical therapy records indicated continued progress with exercise.

(Administrative Record at 59.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Risk. The Court also finds that the ALJ provided "good reasons" both explicitly and implicitly for rejecting Dr. Risk's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2.    Dr. Dunn's Opinions

Petrzelka argues that the ALJ failed to properly evaluate the opinions of his examining physician, Dr. Dunn.  Specifically, Petrzelka argues that the ALJ's reasons for discounting Dr. Dunn's opinions are not supported by substantial evidence on the record. Petrzelka concludes that this matter should be reversed and remanded to allow the ALJ to properly evaluate Dr. Dunn's opinions.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant.  20 C.F.R. § 404.1527(d).  If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion:  "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors."  *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)).  "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians.  The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'"  *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In weighing Dr. Dunn's opinions, the ALJ determined that:

> Dr. Dunn diagnosed [Petrzelka] with fibromyalgia, which he noted was being controlled by stretching and Tylenol. . . . Dr. Dunn opined that [Petrzelka] would be expected to have significant difficulty with any physical activities requiring repetitive movements, lifting, carrying, prolonged maintenance of any particular position, or travel.  Limited weight has been given to Dr. Dunn's opinions, as it is unclear what medical findings were relied upon in forming said conclusions. Dr. Dunn stated 'Based upon the above diagnoses . . .' which appears to be a statement as to the impairments in general rather than specific symptoms [Petrzelka] experienced. Indeed, testing revealed a normal gait, and a musculoskeletal examination indicated a full range of motion and muscle strength at all major joints.  His physical examination was non-contributory with no evidence of weakness, joint effusion, or muscle wasting.

(Administrative Record at 57.)  More generally, the ALJ also determined that:

> the objective findings in this case fail to provide strong support for [Petrzelka's] allegations of disabling symptoms and limitations.  More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity.

(Administrative Record at 57.)  Additionally, the ALJ found that:

> [Petrzelka] engaged in diverse activities of daily living, which one would not expect given his allegations of disabling symptoms. [Petrzelka] used the computer daily, attended AA meetings regularly, went to church, talked with friends on the phone, shopped for groceries online and in person, prepared simple meals, and carried out compost weekly.  Furthermore, [he] performed volunteer work for twelve hours per week as an alcohol counselor.  This further supports a finding that [Petrzelka] is capable of remembering and keeping track of tasks.  Physical therapy records indicated continued progress with exercise.

(Administrative Record at 59.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Dunn.  The Court also finds that the ALJ provided "good reasons" both explicitly and implicitly for rejecting Dr. Dunn's opinions.  *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967.  Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. *Washler's Opinions*

Washler, as a licenced social worker therapist, is not classified as an "acceptable medical source" under the Social Security Regulations.  Even though Washler is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination.  On August 9, 2006, the SSA issued Social Security Ruling 06-03p.  The purpose of Ruling 06-03p was to

clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p).   Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a licenced social worker, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p.  Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p.   Instead, there must be evidence from an 'acceptable medical source' for this purpose.   However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p).  In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In addressing Washler's opinions, the ALJ determined that:

> Steven Washler, LISW, opined in February 2008 that [Petrzelka] had marked difficulties in maintaining concentration, persistence, and pace. [Petrzelka] allegedly could not meet competitive standards in his ability to deal with stress of semiskilled and skilled work. . . . Licensed social workers are not identified as acceptable medical sources, but 'other' sources, and the undersigned must rely on the opinions of the treating and consulting medical specialists who examined [Petrzelka].   Moreover, the specific objective findings needed to support the level of restrictions noted by Mr. Washler are not documented. Indeed, treatment records

> illustrated continued progress and stability during the relevant
> period.

(Administrative Record at 55.)  Having reviewed the entire record, the Court finds that the

ALJ properly considered Washler's opinions in accordance with SSR 06-03p.

Furthermore, the ALJ properly articulated his reasons for finding Washler's opinions to

be inconsistent with the record as a whole.  *See Raney*, 396 F.3d at 1010.  Accordingly,

even if inconsistent conclusions could be drawn on this issue, the Court upholds the

conclusions of the ALJ because they are supported by substantial evidence on the record

as a whole.  *Guilliams*, 393 F.3d at 801.

### 4.   *Mental Impairment*

Petrzelka argues that the ALJ erred by failing to find he had a severe mental

impairment.  In *Buckner v. Astrue*, 646 F.3d 549, 556-57 (8th Cir. 2011), the Eighth

Circuit Court of Appeals set forth the requirements necessary for determining the severity

of a claimant's mental impairments.  Specifically, the Social Security Regulations require:

> the ALJ to consider 'four broad functional areas in which the
> ALJ will rate the degree of the claimant's functional limitation:
> Activities of daily living; social functioning; concentration,
> persistence, or pace; and episodes of decompensation.'

*Id*. (quoting 20 C.F.R. § 404.1520a(c)(3)).  If an ALJ rates the "first three functional areas

as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your

impairment(s) is not severe, unless the evidence otherwise indicates that there is more than

a minimal limitation in your ability to do basic work activities."  20 C.F.R.

§ 404.1520a(d)(1).

In his decision, the ALJ thoroughly discussed Petrzelka's mental health history.[13]

Specifically, the ALJ determined that:

> There is no evidence of psychosis, lethal ideation, or
> psychiatric hospitalization.   [Petrzelka's]  medically
> determinable mental impairment of depression did not cause

---

[13] *See* Administrative Record at 54-55.

more than minimal limitation in [his] ability to perform basic mental work activities and was therefore nonsevere.

(Administrative Record at 55.)  Additionally, the ALJ properly outlined the law found in the regulations and applied it in this case.[14]  Specifically, the ALJ concluded that:

> Because [Petrzelka's] medically determinable mental impairment caused no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it was nonsevere.

(Administrative Record at 55.)  Moreover, the ALJ found that:

> [Petrzelka] engaged in diverse activities of daily living, which one would not expect given his allegations of disabling symptoms. [Petrzelka] used the computer daily, attended AA meetings regularly, went to church, talked with friends on the phone, shopped for groceries online and in person, prepared simple meals, and carried out compost weekly.  Furthermore, [he] performed volunteer work for twelve hours per week as an alcohol counselor.  This further supports a finding that [Petrzelka] is capable of remembering and keeping track of tasks.  Physical therapy records indicated continued progress with exercise.

(Administrative Record at 59.)

Having reviewed the entire record, the Court finds that the ALJ complied with the requirements of the Social Security Regulations, and properly determined that Petrzelka's mental impairments were nonsevere. *See* 20 C.F.R. §§ 404.1520a(c)(3), 404.1520a(d)(1); *see also Buckner*, 646 F.3d at 556-57.  Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 5.   *RFC Assessment*

Petrzelka argues that the ALJ's RFC assessment is not supported by substantial evidence in the record.  Petrzelka asserts that this matter should be remanded so that the ALJ can more fully and fairly develop the record with regard to his RFC.  Petrzelka also

---

[14] *Id*. at 55.

maintains that this matter should be remanded to require the ALJ to order a consultative examination due to the ALJ's rejection of various opinions from treating and examining sources.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

An ALJ also has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to

whether the additional information needed is readily available from the records of your medical sources."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Here, the ALJ thoroughly reviewed Petrzelka's medical records and fully considered the opinions of treating and consultative sources.[15] The Court finds such medical evidence adequate for making a disability determination. No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Accordingly, the Court determines that remand is unnecessary for a consultative examination. *See Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled). Accordingly, the Court determines that the ALJ fully and fairly developed the record as to the medical evidence in this case. *See Cox*, 495 F.3d at 618.

Similarly, having reviewed the entire record, the Court finds that the ALJ properly considered Petrzelka's medical records, observations of treating physicians, and Petrzelka's own description of his limitations in making his RFC assessment for Petrzelka.[16] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

---

[15] *See* Administrative Record at 54-59.

[16] *See id.*

## VI.  CONCLUSION

The Court finds that the ALJ properly considered and weighed the opinion evidence provided by Petrzelka's "treating therapist," Dr. Risk; examining physician, Dr. Dunn; and treating therapist, Steven Washler.  The Court also finds that the ALJ properly determined that Petrzelka's mental impairments were nonsevere.  Lastly, the Court finds that the ALJ fully and fairly developed the record with regard to the medical evidence in the case, and made a proper RFC assessment for Petrzelka.  Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII.  ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.     The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.     Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.     The Clerk of Court is directed to enter judgment accordingly.

DATED this _10th_ day of July, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA